UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| WANG YAN, individually and on behalf of all other similarly situated parties, | ) ) ) | Civil Action No. 17-10169-FDS |
| Plaintiff, | ) ) ) |   |
| v. | ) ) |   |
| REWALK ROBOTICS LTD., LARRY JASINSKI, AMI KRAFT, AMIT GOFFER, JEFF DYKAN, HADAR RON, ASAF SHINAR, WAYNE B. WEISMAN, YASUSHI ICHIKI, ARYEH DAN, GLENN MUIR, BARCLAYS CAPITAL INC., JEFFERIES LLC, and CANACCORD GENUITY INC., | ) ) ) ) ) ) ) ) ) |   |
| Defendants. | ) ) |   |

## MEMORANDUM AND ORDER ON LEAD PLAINTIFF'S REQUEST TO ADD JOANNE GELLER AS NAMED PLAINTIFF

**SAYLOR, J.**

This is a putative class action alleging violations of Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Exchange Act of 1934. The plaintiff class purchased common stock of ReWalk Robotics, Ltd. between September 12, 2014 (the date of its initial public offering ("IPO")) and February 29, 2016. The consolidated amended complaint alleges that ReWalk, its officers and directors, and the IPO underwriters concealed material information in its IPO registration statement about ReWalk's failure to comply with FDA regulations in violation of the Securities Act. It also alleges that after the IPO, ReWalk and certain officers continued to make material false statements after the initial offering in violation of the Exchange Act. It relies in part on statements by three former ReWalk employees acting as

confidential witnesses.

Defendants moved to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4, 78u-5. On August 23, 2018, the Court dismissed the Securities Act claim on the ground that the complaint failed to identify a false or misleading statement in the registration statement. As to the claims under the Exchange Act, however, the Court denied the motion to dismiss without prejudice. It noted that the lead plaintiff, Wang Yan, purchased shares only in September 2014, at the time of the initial public offering, and could therefore assert claims personally only under the Securities Act. And it provided plaintiff an opportunity to seek the appointment of a substitute or supplemental lead plaintiff or to take other steps to establish standing.

Yan has elected to seek to amend the complaint to add Joanne Geller as a named plaintiff as to the Exchange Act class. For the following reasons, the motion will be denied.

I. **Background**

A. **Factual Background**

The allegations in the consolidated amended complaint are set out in the Court's Memorandum and Order dated August 23, 2018. Familiarity with that opinion is assumed. The factual background relevant to the motion to amend is set forth below.

Defendant ReWalk Robotics, Ltd., formerly known as Argo Medical Technologies, Inc., is a medical device company. It designs and develops exoskeletons, which are devices that help persons with spinal-cord injuries walk. (CAC ¶ 2). The company is incorporated in Israel and has its United States headquarters in Marlborough, Massachusetts. (*Id.* ¶ 26).

ReWalk currently sells two distinct products: ReWalk Personal, which is designed for

everyday use, and ReWalk Rehabilitation, which is designed for clinical rehabilitation centers. (*Id.* ¶ 46). Both devices are regulated in various jurisdictions by the FDA, the European Union, or other governmental agencies. (*Id.* ¶ 94). This proceeding concerns only the ReWalk Personal device, which the Court will refer to as the "device."

In 2014, ReWalk submitted the device to the FDA for "de novo" classification. (*Id.* ¶ 47). "De novo" classification allows manufacturers to market devices that are low-to-moderate risk and not substantially similar to devices that are already being marketed. (*Id.*).

On June 26, 2014, the FDA approved the ReWalk device for marketing. It designated the ReWalk device "Class II," requiring special controls. (*Id.* ¶¶ 48-49).[1] The FDA also ordered the company to conduct a "post-market surveillance" study to determine the product's risks, as required by Section 522 of the Food, Drug, and Cosmetic Act. (*Id.* ¶¶ 4, 48-49; 21 U.S.C. § 360L(a)(1)(A)). FDA regulations require manufacturers to report results of such studies, including important attributes such as the type of test subjects, methodology, data-collection plan, and patient follow-up. 21 C.F.R. 822.10. The FDA required the study due to concerns that a malfunction could result in serious injury or death to a patient. (CAC ¶¶ 4, 49).

The complaint alleges that defendants failed to disclose that ReWalk was either unprepared or unable to comply with the FDA's June 2014 directive that it perform post-market surveillance. (*Id.* ¶¶ 16, 68).

Prior to the IPO, ReWalk filed a registration statement with the SEC stating that it had developed a "breakthrough product" that would "deliver a natural gait and functional walking speed." (*Id.* ¶ 90). The complaint alleges that the registration statement failed to disclose that

---

[1] The FDA classifies medical devices into one of three classes—Class I, Class II, and Class III—depending on the risk associated with the device. (*Id.* ¶ 48). Class I devices are considered the safest, and Class III devices are considered the riskiest. (*Id.*).

3

the reason the FDA ordered the company to conduct a post-market surveillance study was that the ReWalk device posed a threat of serious injury or death. (*Id.* ¶¶ 85-95).

The initial public offering of ReWalk occurred on September 12, 2014. (*Id.* ¶ 5). Lead plaintiff Wang Yan purchased 3,600 shares of ReWalk in September 2014, shortly after the IPO. (Docket No. 7, Ex. C).

Two weeks after the IPO, on September 29, 2014, the FDA contacted ReWalk to inform the company that its proposed post-market surveillance study was deficient. (CAC ¶ 7). Notably, the FDA letter stated that although the plan was deficient, because less than six months had elapsed since the issuance of the Section 522 order, the study status would be marked as "Plan Pending" on the FDA's website. (Feldman Decl. Ex. F at 3). The FDA granted ReWalk 30 days to file a response. (CAC ¶ 7).

ReWalk failed to do so in a timely fashion. (*Id.* ¶ 8). It eventually filed a response on November 6, 2014. (*Id.*). On February 13, 2015, the FDA found that the November 6 submission was also deficient. (*Id.*). The FDA granted ReWalk another 30 days to file a further response, and the company responded (late) on May 22, 2015. (*Id.* ¶¶ 8-10). ReWalk stated that it wanted to discuss an issue with the FDA before submitting a formal reply to the February 13 letter. (*Id.* ¶ 10).

According to the complaint, during that time, ReWalk officials held quarterly earnings calls during which they failed to disclose the company's failure to comply with the FDA's requirement. Specifically, those calls were made on February 12, 2015 (Q4 2014), May 7, 2015 (Q1 2015), August 6, 2015 (Q2 2015), November 11, 2015 (Q3 2015), and February 25, 2016 (Q4 2015). (*Id.* ¶¶ 99-110).

On September 5, 2015, the FDA cautioned ReWalk that it still had not submitted a

revised study plan addressing the deficiencies previously identified by the agency. (*Id.* ¶ 13). Having received no response, on September 30, 2015, the FDA issued a warning letter outlining the company's substantial failure to comply with the post-market surveillance requirement. (*Id.* ¶ 14). Specifically, the letter stated that under the Section 522 order, ReWalk was required to begin its surveillance study "not later than 15 months after the day on which [a Section 522 order] is issued." (Pl. Ex. C at 2). The 15-month time frame had closed on September 28, 2015. (*Id.*). The letter went on to state that ReWalk had "committed a prohibited act under section 301(q)(1)(C) of the [Food, Drug, and Cosmetic Act]" and that the ReWalk device was "currently misbranded." (*Id.*). The letter was eventually disclosed to the public by the FDA on March 1, 2016. (CAC ¶ 18).

In the meantime, on December 21, 2015, proposed plaintiff Joanne Geller purchased 1,000 shares of ReWalk common stock at $14.80 per share. (Jafri Decl. Ex. A).

ReWalk's closing stock price on February 29, 2016, the day before the FDA released the letter, was $10.48. (CAC ¶ 19). The closing price the following day, on March 1, 2016, was $9.07, reflecting a 13% decline in value. (*Id.*). The stock price steadily declined thereafter, and ReWalk shares were trading in August 2018 at around $0.75 to $1.25.[2]

At the end of March 2016, the FDA exercised its enforcement discretion and allowed ReWalk to continue to market its device, provided that it would initiate the post-market surveillance study by June 1, 2016. (*Id.* ¶ 114). The FDA approved ReWalk's proposed protocol for the study on May 5, 2016. (*Id.* ¶ 115). However, ReWalk did not file timely monthly reports to the FDA in June and July 2016. (*Id.* ¶ 116). Although the approved protocol

---

[2] The Court takes judicial notice of ReWalk's stock price. *See* Fed. R. Evid. 201(b)(2). Because ReWalk common stock is publicly traded on NASDAQ, its stock price "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.*

5

required 60 subjects from twelve United States clinical areas, according to CW-3, ReWalk had only recruited eight subjects from three areas by June 2017. (*Id.* ¶ 117-18).[3]

B.  **Procedural Background**

Plaintiffs in this action initially filed suit in California state court on September 20, 2016. (Docket No. 37, Ex. 4 at 2). The California action was dismissed for lack of personal jurisdiction over the defendants. (*Id.*).[4]

On October 31, 2016, plaintiff Shane Vesey filed suit against defendants in the Massachusetts Superior Court. (*Id.* Ex. 1). On November 30, 2016, plaintiff Phanindra Chittavajhula also filed suit against defendants in the Superior Court. (*Id.* Ex. 2). Both cases were putative class actions alleging violations of the federal Securities Act relating to omissions in ReWalk's registration statement and final prospectus. The state court consolidated the two cases under the name *In re ReWalk Robotics Ltd. Stockholder Litigation* on January 10, 2017. (*Id.* at 1).

Three weeks later, on January 31, 2017, this action was filed in federal court. The original complaint in this case only alleged violations of the federal Securities Act.

On March 30, 2017, defendants moved in the Massachusetts Superior Court to stay the pending state action on the ground that the present case should be considered the first-filed because the federal complaint mirrored that of the earlier dismissed California state-court complaint. The court denied that motion, finding that the California action was a "nullity" and

---

[3] As noted, the complaint alleges in substance that defendants failed to disclose ReWalk's failure to comply with various FDA regulations both during and after the IPO. In support of those allegations, and as set forth in the Court's August 23, 2018 Memorandum and Order, the complaint relies in part on statements from three confidential witnesses ("CWs"), who were formerly employed by ReWalk.

[4] According to defendants, there have been ten complaints brought by various plaintiffs against them arising from the same set of facts. Two were brought in federal court (one in California and the present case) and eight were brought in state court (five in California and three in Massachusetts). (Docket No. 49 at 3).

6

that the state-court plaintiffs "have made more progress in investigating the factual basis for their claims." (*Id.* Ex. 4 at 3). The court also concluded that there was concurrent state and federal jurisdiction for claims arising from violations of the Securities Act. (*Id.* at 4). Defendants filed a motion to dismiss the state action, and a hearing was held on October 18, 2017.

In the interim, on June 9, 2017, in this proceeding, the Court appointed a lead plaintiff (Wang Yan), lead counsel, and liaison counsel.

Lead plaintiff Yan filed a consolidated amended complaint on August 9, 2017. That amended complaint added claims under the federal Exchange Act, 15 U.S.C. § 78a *et seq.*, over which federal courts have exclusive jurisdiction.

On November 10, 2017, defendants moved to dismiss the action for failure to complete service of process on the individual domestic defendants pursuant to Rule 4(m), and for failure to state a claim pursuant to Rule 12(b)(6). Defendants then filed a renewed motion to stay in the Superior Court, which was granted on December 13, 2017. On February 23, 2018, the Court denied defendants' motion to dismiss for insufficient service of process.

On August 23, 2018, the Court granted defendants' motion to dismiss the Securities Act claims. As to the Exchange Act claims, it denied the motion to dismiss without prejudice, and gave plaintiff an opportunity to make a supplemental filing concerning the standing issue; to seek the appointment of a substitute or supplemental lead plaintiff; or to take such other steps as they believe may be proper under the circumstances.

On September 10, 2018, lead plaintiff Yan moved to amend the complaint to add Joanne Geller as a named plaintiff.

## II.     Analysis

It is undisputed that Yan purchased his shares on September 15 and 17, 2014. The

statements alleged to have violated the Exchange Act were made between February 12, 2015, and February 25, 2016. The only statements, therefore, that Yan could have relied on were those made on or before September 17, 2014—that is, those in the registration statement, which the Court has found did not violate the Securities Act.

Normally, that would be sufficient to dispose of the Exchange Act claims for lack of standing. *See Gross v. Summa Four, Inc.*, 93 F.3d 987, 992-93 (1st Cir. 1996) (holding that a plaintiff was barred from relying on statements made after he purchased stock in support of his Exchange Act claims, reasoning that the statements "could not possibly have inflated the market price that he paid for those shares.").

Yan contends, however, that he should remain the lead plaintiff in the litigation because his claims are based on a "common scheme" with the claims of the class. He further contends that the PSLRA does not require that he have standing to assert the Exchange Act claims. And he has moved to amend the complaint, contending that Geller should be added as a named plaintiff because (1) she has standing to pursue the Exchange Act claims; (2) her claims are not barred by the statute of limitations; and (3) she satisfies Rule 23 requirements of typicality and adequacy.

For the reasons discussed below, Yan does not have standing to assert claims under the Exchange Act, and cannot cure the deficiency by adding Geller as a named plaintiff. The Exchange Act claims (and the complaint) will therefore be dismissed, and the motion to amend will be denied.

    A.    **Whether Lead Plaintiff Has Standing Based on a "Common Scheme"**

The first issue is whether Yan has standing to assert claims under the Exchange Act based on a "common scheme" to defraud.

As noted, Yan purchased his shares before, not after, the relevant statements were made and therefore could not have relied on the alleged misstatements. Nonetheless, there is authority providing that class representatives may have standing to assert Exchange Act claims arising from statements made after the share purchase date "as long as the statements allegedly made were in furtherance of a common scheme to defraud." *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 13-14 (D. Mass. 2004); *see also Priest v. Zayre Corp.*, 118 F.R.D. 552, 556-57 (D. Mass. 1988); *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 311-12 (D. Mass. 1987).

The applicability of that principle here, however, is entirely undercut by the manner in which plaintiff structured his complaint. The complaint clearly alleges that the Securities Act claims and the Exchange Act claims are based on different theories: the Securities Act claims are based on an alleged failure to disclose the reason the FDA required the post-market surveillance study, and the Exchange Act claims are based on an alleged failure to disclose the company's difficulties in meeting that requirement. Moreover, as noted, the complaint expressly alleges that plaintiff "disclaims any reliance upon [the Exchange Act allegations] or incorporation of these allegations in his Securities Act claims." (CAC ¶ 96). And counsel for plaintiff explicitly argued that there were two separate classes—one for the Securities Act claims and one for the Exchange Act claims. (Mot. to Stay Hearing Tr. at 13, 16).

Accordingly, the alleged omissions are not sufficiently similar to constitute a single "common scheme" extending from September 12, 2014, through February 29, 2016. *See City of Bristol Pension Fund v. Vertex Pharm., Inc.*, 12 F. Supp. 3d 225, 235 (D. Mass. 2014).

### B.  Whether the PSLRA Permits Yan to Assert Exchange Act Claims

Yan further contends that the PSLRA permits him, as a lead plaintiff, to assert claims as to which he does not personally have standing. There is authority holding that a lead plaintiff in

9

an action subject to the PSLRA need not have standing to bring every available claim asserted under the securities laws. *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) ("Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action."). "[B]ecause the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." *Id*. The alternative would require the court to "cobble together a lead plaintiff group that has standing to sue on all possible causes of action." *In re IPO Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002).

The problem here is that Yan does not simply lack standing to sue on "every" claim; he lacks standing to sue on *any* remaining claim. *See Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 331-32 (S.D.N.Y. 2012) (noting that "[f]or each claim asserted in a class action, there must be at least one class representative (a named plaintiff or a lead plaintiff) with standing to assert that claim," and that "[o]ther claims, for which the class representatives do not have standing, must be dismissed"). Furthermore, standing is not merely an issue of statutory interpretation, but is a constitutional requirement, as well.[5]

---

[5] Standing is a threshold question in every case; "[i]f a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case." *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992). To satisfy the case-or-controversy requirement of Article III of the United States Constitution, a plaintiff bears the burden of establishing that he or she (1) has suffered an "injury-in-fact," (2) that the injury is "'fairly traceable' to the actions of the defendant[s]," and (3) that the injury will likely be redressed by a favorable decision. *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

"In addition to these Article III prerequisites, prudential concerns ordinarily require a plaintiff to show that his claim is premised on his own legal rights (as opposed to those of a third party), that his claim is not merely a generalized grievance, and that it falls within the zone of interests protected by the law invoked." *Pagan v. Calderon*, 448 F.3d 16, 27 (1st Cir. 2006) (internal citations omitted). Article III standing requirements are "both plaintiff-specific and claim-specific." *Id.* at 26.

Yan has cited no case in which a PSLRA lead plaintiff was able to represent the class despite having *no* standing as to any of the asserted claims. Under the circumstances, the PSLRA cannot confer statutory standing on Yan, and it certainly cannot confer constitutional standing. Accordingly, to the extent that the complaint asserts claims by Yan for violations of the Exchange Act, it will be dismissed.

### C. Whether the Motion to Amend Should Be Granted

Yan further seeks to cure the standing issue by adding Geller as a named plaintiff. The essential problem with that approach is that it assumes that Yan has any authority to ask the court to do anything at all in connection with the claims asserted in this case.

It is black-letter law that "[s]ubstitution of the lead plaintiff could only occur if there were multiple lead plaintiffs." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 361 n.12 (3d Cir. 2013). Where, as here, the case "has only one class representative and that party does not have standing, then the court lacks jurisdiction over the case and it must be dismissed; . . . there is no opportunity for a substitute class representative to take the named plaintiff's place because this means that the court never had jurisdiction over the matter." Rubenstein, *Newberg on Class Actions* § 2:8; *cf. also Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 109 (2d Cir. 2013) (holding that proposed intervenors could not use the "relation back" doctrine to assert claims previously raised by lead plaintiffs and dismissed for lack of standing).

Indeed, multiple courts, in multiple contexts, have denied leave to amend to add additional parties where the original plaintiff lacked standing. *See, e.g.*, *Summit Office Park, Inc. v. United States Steel Corp.*, 639 F.2d 1278, 1282-83 (5th Cir. 1981); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6178891, at *6-8 (E.D. Mich. Dec. 12, 2011); *Hildebrand v. Dentsply Int'l, Inc.*, 2011 WL 4528343, at *3-4 (E.D. Pa. Sept. 30, 2011); *Turner v. First Wisconsin*

*Mortg. Tr.*, 454 F. Supp. 899, 913 (E.D. Wis. 1978); *see also Schwartz v. The Olympic, Inc.*, 74 F. Supp. 800, 801 (D. Del. 1947) ("Plaintiff also seeks to amend his complaint to bring in other parties plaintiff. If he cannot maintain his own complaint, he has no right to amend it. The complaint should be dismissed.").[6]

An analogous issue arose in *In re Elscint, Ltd. Securities Litigation*, 674 F. Supp. 374 (D. Mass. 1987), in the context of tolling the limitations period in a securities class action. The court observed as follows:

> Although the *American Pipe* [*& Construction Co. v. Utah*, 414 U.S. 538 (1974)] decision did not address questions of standing, in interpreting *American Pipe*, federal courts have applied the tolling rule in circumstances in which certification was denied or terminated for reasons other than lack of numerosity, . . . including lack of standing . . . .
>
> Despite [the] analysis [by those courts] of the confluence of the *American Pipe* doctrine and questions of standing, I am troubled by the potential abuse of a rule extending class action tolling to all cases in which certification is denied for lack of standing. Although . . . lack of standing may not *per se* mandate an exemption from the application of the tolling rule, in certain circumstances the allowance of intervention after certification has been denied for lack of standing may condone or encourage attempts to circumvent the statute of limitation by filing a lawsuit without an appropriate plaintiff and then searching for one who can later intervene with the benefit of the tolling rule . . . . I conclude that it would be improper to allow the filing of a class action by nominal plaintiffs who are wholly inadequate to represent the asserted class to have the effect of tolling limitation to permit the otherwise untimely intervention of proper class representatives.
>
> Those cases which have applied the class action tolling rule after class certification was denied for lack of standing do not contradict this conclusion . . . . In [those cases], the original nominal plaintiffs had standing to litigate at least some of the claims they brought, even though not all of them . . . . In contrast, . . . if intervention were allowed in this case, not only would the original plaintiffs not be able to serve as class representatives for the Section 11 claims, they would not even be members of the class which the intervenors would be certified to represent.

---

[6] *See Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1159 (10th Cir. 2011) ("Prior to class certification, the named plaintiffs' failure to maintain a live case or controversy is fatal to the case as a whole—that unnamed plaintiffs might have a case or controversy is irrelevant."); *Crosby v. Bowater Inc.*, 382 F.3d 587, 597 (6th Cir. 2004) ("Where the named plaintiff's claim is one over which federal jurisdiction never attached, there can be no class action.") (quotations and citation omitted).

*Id.* at 377-79 (describing *Rose v. Arkansas Valley Env. & Utility Authority*, 562 F. Supp. 1180, 1192 (W.D. Mo. 1983); *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083 (3d Cir. 1975)) (citations omitted).

Nonetheless, Yan cites three cases for the proposition that "[t]o resolve standing issues, courts have repeatedly recognized the right of a lead plaintiff to amend a complaint to include additional named plaintiffs." (Reply Mem. at 3, n.1). *See In re Portal Software, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 41178 (N.D. Cal. Mar. 9, 2005); *In re Baan Co. Sec. Litig.*, 2002 WL 32307825 (D.D.C. July 19, 2002); *In re Initial Public Offering Sec. Litig.* (*In re IPO*), 2004 WL 3015304 (S.D.N.Y. Dec. 27, 2004).

In *In re Portal Software*, the additional plaintiff, a proposed class representative for additional claims under the Securities Act, was added to resolve the lead plaintiff's lack of *typicality* and *adequacy* with respect to the class claims, not lack of standing. 2005 U.S. Dist. LEXIS 41178, at *4, *13-14. Article III standing is not the same as Rule 23 typicality and adequacy, and *In re Portal Software* is therefore not on point.

*In re Baan* is also inapposite. In that case, the claims of the two lead plaintiffs were dismissed for lack of *subject-matter jurisdiction* (as they neither resided nor purchased stock in the United States), not for lack of standing. *See In re Baan Co. Sec. Litig.*, 103 F. Supp. 2d 1, 25 (D.D.C. 2000). And as to the remaining lead plaintiff, the court's finding that he could not adequately protect the interests of the class was based not on a lack of standing, but rather on his failure to live up to his lead plaintiff responsibilities under the PSLRA. *See In re Baan*, 2002 WL 32307825, at 3-4.

*In re IPO* presents a more analogous set of circumstances to the present case. There, the court did, in fact, suggest that substitution of the lead plaintiff might be permitted to correct

13

defects in standing. In the context of tolling the limitations period for substituted lead plaintiffs, the court observed:

> Defendants cite various opinions from district courts in other Circuits for the general, but incorrect, proposition that *American Pipe* tolling can never be applied to cases where the original lead plaintiff lacks standing. No Second Circuit authority, though, prohibits the proposed substitution of lead plaintiffs where a lead plaintiff asserts that he has standing—and files a lead plaintiff certification delineating trades that, had they actually occurred, would indisputably have conferred standing—and class counsel fails to adequately investigate his claims. I find that tolling the applicable statute of limitations [here], where class counsel mistakenly believed that [the lead plaintiff] had standing to assert his claims, and no prejudice to the defendants will result from allowing the substitution of qualified lead plaintiffs, best satisfies the goals of *American Pipe*.

*In re IPO*, 2004 WL 3015304, at *5.

While at least one court has cited the holding of *In re IPO* approvingly, the principle laid out by the court appears to have been a narrow one: substitution of a lead plaintiff may be allowed where class counsel's inadequate investigation caused a mistaken belief as to the lead plaintiff's standing. *See TDH Partners LLP v. Ryland Grp., Inc.*, 2006 WL 8437050, at *5 n.4 (N.D. Tex. June 2, 2006) ("[T]he [*In re IPO*] Court made clear that substitutions should also be permitted in *appropriate circumstances* where the lead plaintiff lacks standing to pursue class claims.") (emphasis added). Here, however, there was no mistake by counsel, and the issue is not equitable tolling; it is whether a plaintiff without standing has any authority to act at all.

The other cases cited by Yan likewise provide limited support at best for his position. He cites *In re Herley Industries Inc. Securities Litigation*, 2009 WL 3169888 (E.D. Pa. Sept. 30, 2009), as a case in which the "lead plaintiff was no longer adequate to represent the Class," and so the "[p]laintiffs moved to add a named plaintiff as class representative, which the Court allowed." (Reply Mem. at 4). He contends that "[t]he same situation applies to the instant case." (*Id.*). In that case, however, the court ultimately *did* conclude the lead plaintiff had standing (by

14

virtue of his status as an investment advisor who had been assigned his clients' claims). *See In re Herley*, 2009 WL 3169888, at 9 n.11. Furthermore, the appointed class representative was already a named plaintiff in the action, and his standing was not in dispute. *See id.* at 11, 14 & n.17. Therefore, the court observed, if its resolution of the lead plaintiff's standing issue were reversed on appeal, the class representative would be able to continue representing the class. *See id.* at 14 n.17.

Yan also cites *Eshe Fund v. Fifth Third Bancorp*, 2009 U.S. Dist. LEXIS 140342 (S.D. Ohio Mar. 5, 2009), for the proposition that his "apparent lack of standing at this stage in the litigation does not prevent this Court from appointing Geller to fulfill that role." (Reply Mem. at 5). In that case, however, the lead plaintiff had standing to assert some, but not all, of the claims at issue. *See Eshe Fund*, 2009 U.S. Dist. LEXIS 140342, at *13-16. The court concluded that the mere fact that the appointed lead plaintiff lacked standing with respect to some of the subclasses did not mean that it was disqualified from serving as the lead plaintiff for the entire litigation. *See id.* The court also observed that it was "not attempting to dispense with [the] requirement" that "the named plaintiff or class representative in a class action [must] have Article III standing." *See id*. at *15 (citing *Lewis v. Casey*, 518 U.S. 343 (1996)).

Finally, Yan cites to *Greater Pennsylvania Carpenters Pension Fund v. Whitehall Jewellers, Inc.*, 2005 WL 61480 (N.D. Ill. Jan. 7, 2005), as a case in which "[t]he court allowed [a] lead plaintiff [who lacked standing to represent the class] to file an amended complaint naming an additional named plaintiff." (Reply Mem. at 6). In that case, however, the court suggested, but did not hold, that such an amendment would ultimately be allowed. *See Greater Pa. Carpenters Pension Fund*, 2005 WL 61480, at *8. In fact, however, the court *dismissed* the claims for which the lead plaintiff lacked standing, without prejudice, and merely gave "leave to

15

replead to address this deficiency." *See id.* The court observed that it would only "address the legality of whatever course Plaintiff selects to cure this standing defect if and when appropriate." *See id.*

In short, no court appears to have held that a plaintiff in a class action who does not have standing can simply move to amend the complaint to add someone who does. Furthermore, there is considerable doubt whether such a plaintiff has any authority to request the court to do anything at all. Under the circumstances, the Court will deny the motion to amend without prejudice to the filing of a proper complaint by a proper plaintiff.

To summarize, the Court concludes that Yan is without standing; that his claims under the Exchange Act must be dismissed; and that his lack of standing is fatal to the putative class action and cannot be cured by amendment.

### III. Conclusion

For the foregoing reasons, defendants' motion to dismiss the Exchange Act claims is deemed renewed, and is GRANTED. The motion of lead plaintiff Wang Yan to amend the complaint to add Joanne Geller as named plaintiff for the Exchange Act class is DENIED. The complaint is hereby DISMISSED without prejudice.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: May 16, 2019   United States District Judge